```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                       :

CLAUDINO SEVERINO,              :
                                         :

                         Plaintiff,    :

                                         :                 13-CV-3096 (VSB)

             - against -        :

                                         :              **MEMORANDUM & ORDER**

436 WEST L.L.C., et al.,      :

                                         :

                       Defendants.  :

                                         :
--------------------------------------------------------X

<u>Appearances</u>:

David Stein
Michael Steven Samuel
Samuel & Stein
New York, New York
*Counsel for Plaintiff*

Claude Castro
Daniel Paul Martin
Claude Castro & Associates PLLC
New York, New York
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

       Before me is the Motion for Partial Summary Judgment of Plaintiff Claudino Severino

("Plaintiff" or "Severino").  (Doc. 33.)  Severino, a building superintendent, seeks summary

judgment on his claims against his former employers under the federal Fair Labor Standards Act

(the "FLSA") and the New York Wage Theft Protection Act (the "WTPA"), alleging that he was

paid below minimum wage, wrongfully denied overtime pay, and provided inadequate wage

statements and inadequate annual notice of his wages.  There is no genuine dispute of material

fact that Severino was paid less than the minimum wage, that Defendants are not entitled to an

allowance toward the minimum wage for the cost of an apartment they provided to Severino, and

that Defendants failed to provide notice of this claimed allowance on Severino's wage statements.  However, there is a genuine dispute of material fact as to whether Severino worked any overtime, and, as a matter of law, Severino may not assert a claim for Defendants' failure to provide him with annual notice of his wages.  Therefore, for the reasons stated below, Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I.  <u>Background</u>

The following factual summary is drawn principally from the parties' statements of undisputed facts pursuant to S.D.N.Y. Local Civ. R. 56.1.  (Docs. 36, 44.)  All facts are undisputed unless otherwise noted.[1]

Defendant Mehmet Capin ("Mehmet") and his wife own Defendant 436 West L.L.C. ("436 West"), a New York limited liability company.  (Ds' 56.1 Resp. ¶¶ 1, 8.)[2]  Mehmet's sons, Defendants Saruhan Capin ("Saruhan") and Batuhan Capin ("Batuhan"), own Defendant Solar Realty Management Corp. ("Solar Realty"), a property management firm incorporated in New York.  (*Id.* ¶¶ 2, 7, 10, 18.)  Saruhan and Batuhan are the president and vice-president, respectively, of Solar Realty, as well as the managers of 436 West, and they play an active role in managing the day-to-day affairs of both businesses. (*See id.* ¶¶ 4-6, 13-14.)  Most of the properties managed by Solar Realty are owned by the Capin family.  (*Id.* ¶¶ 19.)

Plaintiff Severino was employed by 436 West as a building superintendent from approximately June 2008 through November 2012.  (*Id.* ¶ 24.)  His duties included cleaning, maintenance, trash removal, painting, and general repairs.  (*Id.* ¶ 28.)  From June 2008 through

---

[1] Although Defendants responded to Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, they failed to provide citations to admissible evidence in the record supporting their factual assertions.  *See* Fed. R. Civ. P. 56 (c)(1).

[2] "Ds' 56.1 Resp." refers to Defendants' Response to Plaintiff's Statement of Undisputed Facts.  (Doc. 44.)

August 2008, Severino was assigned to perform these duties at two apartment buildings: 131 Nagle Avenue and 137 Nagle Avenue in Manhattan. (*Id.* ¶ 26.) From August 2008 through approximately November 2012, Severino performed these tasks only at 137 Nagle Avenue. (*Id.* ¶ 27.) Both buildings were managed by Solar Realty during the period Severino worked there.[3] (*Id.* ¶ 21.) Solar Realty had the authority to hire and fire building employees, set their compensation and schedules, and maintain their records. (*Id.* ¶¶ 22-23.) Solar Realty prepared Severino's job description, provided him work assignments, supervised him, and ultimately sent him a letter of termination ending his employment. (*See id.* ¶¶ 30-33.) 436 West issued Severino's paychecks. (*Id.* ¶ 29.)

Severino was paid at a fixed rate of $250 per week. (*Id.* ¶ 41.) He was also provided with a basement apartment at 137 Nagle Avenue, where he was required to live as a condition of his employment.[4] (*Id.* ¶¶ 44-45.) For the first three and a half years of Severino's employment, Defendants did not provide a time clock, sign-in sheet, scanner, or other means for Severino to log his work hours. (*Id.* ¶ 35.) Beginning in early 2012, Severino was required to fill out biweekly time sheets. (*Id.* ¶ 36.) Severino received pay stubs with his pay checks, which stated his wages but did not indicate any allowances claimed by Defendants. (*Id.* ¶ 42.)

The parties dispute whether Severino worked more than forty hours per week, and whether he would have received compensation for working overtime if he had sought prior authorization from his supervisors. (*Id.* ¶¶ 37-40.) It is undisputed that Severino was not provided with notice of any allowances Defendants claimed toward the minimum wage, (*id.* ¶

---

[3] The parties dispute what entities owned the apartment buildings during what period, (*see* Ds' 56.1 Resp. ¶¶ 15, 16), but that dispute is not relevant to the instant Motion.

[4] The parties dispute whether Severino was required to live there by law or simply by agreement. (*See* Ds' 56.1 Resp. ¶ 44.)

42), but Defendants dispute Severino's claim that he was not provided with and was not asked to sign a notice of his wage rate or his designated pay day, (*id.*).  It is undisputed that, at some point, Defendants had a policy of deducting money from employees' paychecks for violations, and that $100 was deducted from Severino's paycheck on two occasions.  (*Id.* ¶ 47.)  Defendants assert, however, that this policy was rectified and that Severino was reimbursed for the deductions.  (*Id.*)

## II.    <u>Procedural History</u>

Plaintiff initiated this action by filing a Complaint on May 8, 2013.  (Doc. 1.)  The case was originally assigned to the Honorable Paul A. Engelmayer, and it was reassigned to me on February 3, 2014.  (Docket Entry of Feb. 3, 2014.)  Plaintiff filed a First Amended Complaint on February 14, 2014, (Doc. 22), which Defendants answered on March 18, 2014, (Doc. 25).  In his Amended Complaint, Plaintiff asserts claims for:  failure to pay overtime under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, (Am. Compl. ¶¶ 49-54)[5]; illegal deductions from his paychecks under N.Y. Labor Law § 198–c and its implementing regulations, (*id*. ¶¶ 55-60); failure to provide weekly wage statements and annual notice pursuant to the New York Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, (Am. Compl. ¶¶ 61-65); and failure to pay minimum wage under the FLSA, (*id.* ¶¶ 66-71).

Plaintiff filed the instant Motion on June 12, 2014, (Doc. 33), seeking summary judgment on his claims under the FLSA and the WTPA.[6]  Plaintiff also filed declarations and supporting exhibits, (Docs. 34-35), a Local Rule 56.1(a) statement of undisputed facts, (Doc. 36), and a memorandum of law in support of the Motion, (Doc. 37).  On July 22, 2014, Defendants filed

---

[5] "Am. Compl." refers to the First Amended Complaint.  (Doc. 22.)

[6] Plaintiff does not move for summary judgment on his claim for illegal deductions.

their memorandum of law, (Doc. 43), declarations and exhibits, (Docs. 41-42), and Local Rule

56.1(b) response to Plaintiff's statement of undisputed facts, (Doc. 44), in opposition to the

Motion.  Plaintiff filed a reply memorandum on August 4, 2014.  (Doc. 45.)

### III.   <u>Legal Standard</u>

Summary judgment is appropriate when "the parties' submissions show that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a).

"[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing

law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of

establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at

256, and to present such evidence that would allow a jury to find in his favor, *see Graham v.

Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply

show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a

party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## IV.   **Discussion**

Before addressing the merits of Plaintiff's claims, I begin with a procedural matter. Local Rule 56.1(d) requires that "[e]ach statement by the movant or opponent pursuant to [Local] Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible." S.D.N.Y. Local Civ. R. 56.1(d). Defendants' Local Rule 56.1 statement includes no citations to record evidence; they simply fail to identify any evidence to contradict Plaintiff's statements or to support their own assertions that genuine disputes of material fact exist.

I have "broad discretion to determine whether to overlook [Defendants'] failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). I am not required to consider evidence that Defendants fail to point out in their Local Rule 56.1

statement, and, where assertions in Defendants' Local Rule 56.1 statement are unsupported by citations to admissible evidence, I am free to disregard those assertions. *See id.* at 73-74; *see also*, *e.g.*, *Risco v. McHugh*, 868 F. Supp. 2d 75, 87 n.2 (S.D.N.Y. 2012); *Watt v. N.Y. Botanical Garden*, No. 98-CV-1095, 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000). However, I may undertake an independent review of the record to determine whether admissible evidence supports Defendants' contradictions of Plaintiff's statements. *See Holtz*, 258 F.3d at 73. The evidentiary record submitted by the parties is not particularly voluminous, and there are few disputed factual issues, so it was not unduly burdensome for the Court to parse through the record to identify the relevant evidence in support of Defendants' position. Therefore, I overlook Defendants' utter failure to comply with Local Rule 56.1 and undertook an independent review of the record to marshal the evidence supporting Defendants' assertions.

### A.   *FLSA*

It is undisputed that 436 West and Solar Realty constitute an enterprise under the FLSA, that their employees are engaged in commerce, and that their gross annual volume of business exceeds $500,000. (D's 56.1 Resp. ¶ 17); *see* 29 U.S.C. §§ 203(r), 203(s); *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 464 (S.D.N.Y. 2006). There is also no dispute that Defendants are employers within the meaning of the FLSA, *see*, *e.g.*, *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013), and that Severino was their employee. Defendants were therefore subject to the FLSA's minimum wage and overtime requirements.

### 1.   **Minimum Wage**

Pursuant to 29 U.S.C. § 206, employers covered by the FLSA were required to pay employees a wage of not less than $5.85 per hour beginning on July 24, 2007; a wage of not less

than $6.55 per hour beginning on July 24, 2008; and a wage of not less than $7.25 per hour on July 24, 2009.  *See* 29 U.S.C. § 206(a)(1).  It is undisputed that Severino was compensated at a rate of $250 per week throughout his employment.[7]  (Ds' 56.1 Resp. ¶¶ 26, 41.)  Under the FLSA, an agreed-upon weekly salary presumptively covers a forty-hour work week.  *See Moon v. Kwon*, 249 F. Supp. 2d 201, 207 (S.D.N.Y. 2002).  Defendants do not dispute that Severino's weekly wage was intended to apply to a forty-hour work week.  Severino's weekly wage of $250 per week is equivalent to a wage of $6.25 per hour for a forty-hour week.  It is undisputed that Severino was employed by Defendants beginning in approximately June 2008 and that his duties concluded in approximately November 2012.  (Ds' 56.1 Resp. ¶¶ 24, 26, 27.)  Severino's employment was formally terminated effective January 3, 2013.  (Severino Decl. Ex. C.)  Thus, from July 24, 2008, until the conclusion of his employment, Severino's monetary compensation was less than the hourly minimum wage required by the FLSA.[8]

However, the "'[w]age' paid to any employee includes the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees."  29 U.S.C. § 203(m).  Defendants argue that, pursuant to this provision, the cost of the basement apartment they undisputedly provided to Severino, (Ds' 56.1 Resp. ¶ 45), should be included in

---

[7] Severino has provided pay stubs covering many, but not all, of the pay periods during the course of his employment.  (*See* Severino Decl. Ex. B.)  The pay stubs from 2008 and 2009 indicate that Severino's earnings were $541.66 per pay period, while the pay stubs from 2010 through 2012 indicate that his earnings were $500 per pay period.  Severino explains in his declaration—and Defendants do not controvert—that this discrepancy is attributable to an administrative change from twice-monthly pay periods to biweekly pay periods.  (*See id.* ¶ 18.)  The underlying rate of $250 per week remained constant throughout Severino's employment.  (*Id.*)  The total wages from twenty-four twice-monthly payments of $541.66 equal the total wages from twenty-six biweekly payments of $500.  ("Severino Decl." refers to the Declaration of Claudino Severino.  (Doc 34.))

[8] At present, I need not resolve any factual uncertainty concerning the precise start and end dates of Severino's employment because he does not attempt to prove the amount of his damages on the instant Motion.  *Cf. Hart*, 967 F. Supp. 2d at 943-44 (S.D.N.Y. 2013) (granting partial summary judgment in favor of plaintiffs as to liability only under the FLSA and New York Labor Law).

the calculation of his wages.  (Doc. 43, at 3-4.)    Severino argues that Defendants should not be entitled to credit the cost of the apartment toward his wages for three independent reasons.  First, Defendants failed to comply with the requirement that an employer who furnishes lodging as a supplement to wages must, with exceptions not applicable here, "maintain and preserve records substantiating the cost of furnishing" that lodging.  29 C.F.R. § 516.27; (*see* P's Mem. 11; P's Reply 2-3.)[9]  Second, "the cost of furnishing 'facilities' . . . primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages", 29 C.F.R. § 531.3, and Severino contends that he was provided with the apartment primarily for Defendants' benefit, (P's Mem. 12; P's Reply 3-4).  Third, only customarily furnished facilities may be credited toward wages under 29 U.S.C. § 203(m), and "[f]acilities furnished in violation of any Federal, State, or local law, ordinance or prohibition will not be considered facilities 'customarily' furnished."  29 C.F.R. § 531.31.  Severino argues that his apartment was furnished in violation of the law.  (P's Mem. 11-12; P's Reply 4-5.)

Where an employer has failed to maintain records substantiating the cost of providing the lodging it seeks to credit toward an employee's wages, "courts have routinely denied employer offsets under the FLSA."  *Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356, 2014 WL 1310311, *9 (E.D.N.Y. Mar. 10, 2014) (internal quotation marks and alteration omitted); *accord Jiao v. Shi Ya Chen*, No. 03-CV-165, 2007 WL 4944767, at *14 (S.D.N.Y. Mar. 30, 2007); *see also Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 256 (S.D.N.Y. 2008) (noting that an employer may claim credit for providing meals under § 203(m) only if it is "properly documented").  "[T]he employer must retain records documenting the out-of-pocket costs that it incurred, and

---

[9] "P's Mem." refers to the Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment Against Defendants.  (Doc. 37.)  "P's Reply" refers to the Reply Memorandum in Support of Plaintiff's Partial Motion for Summary Judgment Against Defendants.  (Doc. 44.)

bears the burden of proving both the actual costs and their reasonableness."  *Ke*, 595 F. Supp. 2d at 256-57.

The only records provided by Defendants are:  (1) annual rent rolls for 137 Nagle Avenue from January 2011, January 2012, January 2013, and January 2014, showing the market rent, legal rent, and actual rent, of each of the apartments in the building, (Capin Decl. Ex. C)[10]; and (2) electric bills from March 28, 2014, through June 26, 2014, for 137 Nagle Avenue, (*id.* Ex. D).  Saruhan Capin avers that the rent rolls "confirm that the value of the apartment which Severino and his family occupied (4 rooms) is at a minimum $1,200 per month."  (*Id.* ¶ 27.) While this assertion may or may not represent the rental value of the apartment, it does not reflect the actual cost of providing the apartment to Severino because Defendants concede that they could not have legally rented the apartment to anyone else.  (Ds' 56.1 Resp. ¶ 46; Ds' Second Admission Resp. No. 2.)[11]  Indeed, the rent rolls for 2011 and 2012, when Severino actually lived in the building, specifically list the market rent, legal rent, and actual rent for the superintendent's apartment as "0.00."  (Capin Decl. Ex. C.)  Therefore, assuming without deciding that annual rent rolls could constitute sufficient documentation to satisfy Defendants' obligation to "maintain and preserve records substantiating the cost of furnishing" lodging under 29 C.F.R. § 516.27, these particular rent rolls do not provide any evidence of a lodging allowance toward the minimum wage because they expressly document that the actual cost to Defendants of providing lodging was zero.

The electric bills provided by Defendants do not satisfy the record-keeping requirements of 26 C.F.R. § 516.27 and do not document any credit toward Severino's wages.  Saruhan Capin

---

[10] "Capin Decl." refers to the Declaration in Opposition of Saruhan Capin.  (Doc. 41.)

[11] "Ds' Second Admission Resp." refers to Defendants' Responses to Plaintiff's Second Set of Requests for Admission.  (Doc. 35-7.)

avers that the electric bills are for a single meter that includes both the common spaces in the building and Severino's apartment.  (Capin Decl. ¶ 28.)  The bills reflect total monthly payments of approximately $400.  (*Id.* Ex. D.)  According to Saruhan, because the lights in the building's common spaces are energy-efficient and are only on at night, the monthly electricity costs attributable to the superintendent's apartment are $200 at a minimum.  Even accepting all of Capin's assertions as true,[12] and assuming without deciding that the cost of electricity is included within the cost of "lodging[] or other facilities" within the meaning of 29 U.S.C. § 203(m), these electric bills are still plainly insufficient to substantiate any credit toward Severino's wages. Severino was terminated effective January 3, 2013, (Severino Decl. Ex. C), and the electric bills are from the middle of 2014, (Capin Decl. Ex. D).  The text of 29 C.F.R. § 516.27 makes clear that it demands ongoing, contemporaneous record-keeping when it requires employers to "*maintain and preserve*" records documenting their costs, 29 C.F.R. § 516.27(a) (emphasis added), and when it exempts any weeks in which the employee received not less than the statutory minimum wage in cash from the record-keeping requirement, *see id.* § 516.27(c). Electric bills from a year and a half after Severino concluded his years of employment are not contemporaneous records and do not "properly document[]" the actual cost of providing Severino with electricity during his employment and therefore do not entitle Defendants to any credit toward the minimum wage.  *Ke*, 595 F. Supp. 2d at 256.

I conclude that Defendants may not claim an allowance toward the minimum wage for providing Severino with lodging because they have not introduced evidence to support an inference that the actual cost of doing so was anything other than zero.  I therefore need not

---

[12] I note that Capin's statements regarding the allocation of electricity costs between the common spaces and the basement apartment are wholly unsubstantiated and potentially inadmissible.  Moreover, there is also no evidence that these costs are reasonable.

address Plaintiff's two additional arguments why Defendants may not claim an allowance toward the minimum wage. However, I note that Defendants failed to provide any explanation for—or any legal authority in support of—their assertion that they could lawfully provide the apartment to Severino even though they concede they could not lawfully rent it to a tenant. (*See* Ds' 56.1 Resp. ¶ 46; Ds' Second Admission Resp. No. 2; Gomez Dep. 96:3-14.)[13] The law in New York is clear that "[n]o janitor, superintendent, manager, custodian, or the like, of a multiple dwelling shall be permitted to reside in an apartment unit in the multiple dwelling in which he is employed if the rental of such apartment unit to a tenant is prohibited by any general, special, or local law." N.Y. Mult. Dwell. Law § 309-a(1). Although the building owner may seek a waiver of this provision "on the ground that there is a bona fide unavailability of a suitable apartment unit" for the employee's use, *id.* § 309-a(2), Defendants have introduced no evidence that they sought or received such a waiver.

In sum, there is no genuine dispute of material fact that Severino's cash wages were less than the minimum wage mandated by the FLSA from July 24, 2008 until the date his employment was terminated. Nor have Defendants provided legally sufficient evidence to raise a genuine dispute of material fact concerning their entitlement to a credit toward the minimum wage for providing Severino with lodging or utilities. All evidence provided by Defendants either does not document their actual costs or documents an actual cost of zero. Therefore, Plaintiff's Motion for Partial Summary Judgment is GRANTED as to liability on his minimum wage claim under the FLSA without credit for lodging or utilities.

---

[13] "Gomez Dep." refers to the Transcript of the Deposition of Jairo Gomez, a Witness on Behalf of the Defendant, Mar. 5, 2014. (Doc. 35-6.)

### 2. Overtime

With numerous exceptions not applicable here, 29 U.S.C. § 207 requires that an employer under the FLSA compensate an employee at an overtime rate of no less than one and a half times his regular pay rate for work in excess of forty hours in a week.

The evidence that Severino worked more than forty hours per week consists solely of his testimony. Severino avers in his declaration that he often worked more than forty hours per week—usually about fifty hours, but sometimes as many as sixty. (Severino Decl. ¶¶ 8, 10.) Severino avers that he was always "on call" and needed to perform his job responsibilities at all hours of the day, including during the evenings and weekends. (*Id.* ¶ 9.) Throughout most of the period of Severino's employment, there was no time clock, log book, time sheet, or other method provided by the Defendants for him to keep track of his hours. (*Id.* ¶ 11.) Beginning in approximately January 2012, Severino was instructed to keep biweekly time sheets, but was told by Gomez that he would not be paid unless he listed only forty hours of work each week. (*See id.* ¶¶ 12-17.) Severino therefore listed forty hours per week on all of his timesheets from early 2012 until his employment was terminated. (*Id.* ¶ 16.)

In response, both Saruhan Capin and Jairo Gomez, the property manager at 137 Nagle Avenue from March 2012 until the time of Severino's termination, (Gomez Dep. 19:11-16), aver that Severino was required to request permission if he wished to work overtime and never did so, (Capin Decl. ¶ 13; Gomez Decl. ¶ 6).[14] According to Saruhan, Solar Realty maintained a policy requiring all of its building superintendents to seek authorization from their property managers in advance if they needed to work overtime to complete a task. (Capin Decl. ¶ 8.) This policy was in place from 2008 through Severino's termination. (*See id.* ¶ 16.) Gomez, who supervised

---

[14] "Gomez Decl." refers to the Declaration in Opposition of Jairo Gomez. (Doc. 42.)

Severino in 2012, further testified that Severino was not working at the building during his normal work hours when Gomez checked on his whereabouts, either by phone or in person, on numerous occasions.  (Gomez Decl. ¶ 12.)  At least one of these incidents is documented in a written warning given to Severino shortly before his termination, in which Gomez states that Severino was not present when he went to the building at 3:36 pm.  (*Id.* Ex. B.)  Furthermore, the parties agree that, on the only contemporaneous records documenting Severino's hours, Severino stated that he worked forty hours per week during 2012.  (Capin Decl. ¶ 17; Severino Decl. ¶ 16.)  Saruhan and Gomez deny that they ever told Severino how to fill out these time sheets or forced him in any way to state that he was working forty-hour weeks.  (*See* Capin Decl. ¶ 17; Gomez Decl. ¶ 11.)

Severino argues that, while he has not yet proven the extent of his damages, he is entitled to summary judgment as to liability because he was paid a fixed wage regardless of his hours and was therefore "[b]y definition" not paid the required premium for any overtime hours he worked. (P's Mem. 14.)  This argument misapprehends the law.  I cannot conclude that Defendants have violated 29 U.S.C. § 207(a)(1) merely because the fixed nature of Severino's wages makes it obvious that he would not have been compensated for any overtime he might have worked. Rather, to establish liability on an overtime claim under the FLSA, Severino must prove that he actually worked uncompensated time in excess of forty hours in a given work week.  *See, e.g.*, *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 113-14 (2d Cir. 2013); *Solis v. SCA Restaurant Corp.*, 938 F. Supp. 2d 380, 394 (E.D.N.Y. 2013) ("In an action to recover unpaid overtime wages under the FLSA, a plaintiff must show that:  (1) he was an employee who was eligible for overtime (i.e., not exempt from the Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated." (internal quotation marks

and alteration omitted)).

*Anderson v. Mt. Clements Pottery Co.*, 328 U.S. 680 (1946),[15] and *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2d Cir. 1997), both relied upon by Severino, are not to the contrary. Severino is correct that he cannot be penalized if he is unable to prove the extent of his uncompensated work because of Defendants' failure to keep proper records. *See Reich*, 121 F.3d at 66-67. Where defendants in an action under the FLSA have failed to maintain adequate employment records, the plaintiff may "submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred." *Id.* at 66 (internal quotation marks omitted). At that point, the burden shifts to the employer to produce evidence that demonstrates the precise amount of work performed by the plaintiff or negates the reasonableness of the inference to be drawn from the employee's evidence; if the employer fails to do so, the plaintiff may be awarded damages on an approximate basis. *Id.* at 67.

However, this burden-shifting framework applies to the question of damages, not to the question of liability. "When accurate records or precise evidence of the hours worked do not exist, an employee has carried out his burden if he *proves that he has in fact performed work for which he was improperly compensated* and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 31 (2d Cir. 2002) (emphasis added) (internal quotation marks omitted), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006); *accord Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (4th Cir. 2013) ("*Anderson* only applies where the existence of damages is certain."); *Brown v. Family Dollar*

---

[15] *Anderson* was superseded by statute on other grounds, as recognized in *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 880 (2014).

*Stores of Ind., LP*, 534 F.3d 593, 596 (7th Cir. 2008) ("The *Anderson* test addresses whether there is a reasonable basis to calculate damages, and assumes that a violation of the FLSA had been shown.").  As a threshold matter, on his motion for summary judgment on the question of liability, Plaintiff still has the burden to show that there is no genuine dispute of material fact as to whether he actually worked some amount of overtime.  *See, e.g.*, *Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 2d 211, 224-25 (D. Conn. 2013); *see also Estrella v. P.R. Painting Corp.*, 356 F. App'x 495, 497 (2d Cir. 2009) (summary order) ("If [the employer] failed to compensate [the employee] properly for even one hour of overtime, liability is established.").

On the instant Motion, Severino has failed to establish that there is no genuine dispute of material fact as to whether he worked any overtime.  To the contrary, the conflicting testimony of Severino on the one hand and Capin and Gomez on the other is more than sufficient to create a genuine dispute of material fact as to whether Severino ever worked more than forty hours in a week.  *See, e.g.*, *Arasimowicz*, 948 F. Supp. 2d at 225-26; *Francois v. Mazer*, No. 09-CV-3275, 2012 WL 653886, at *5 (S.D.N.Y. Feb. 28, 2012) (finding competing testimony sufficient to create a genuine dispute of fact as to whether plaintiff worked overtime).  This is especially so in light of the fact that the only available records are time sheets filled out by Severino stating that he worked forty hours a week, and in light of Capin and Gomez's denial of Severino's assertion that he was advised or required to fill out his time sheets in this manner.  (*See* Capin Decl. ¶ 16; Gomez Decl. ¶ 11.)  Because there is a genuine dispute of material fact as to whether Severino ever worked overtime, Plaintiff's Partial Motion for Summary Judgment is DENIED as to liability on his overtime claim under the FLSA.

**B.**     ***WTPA***

Pursuant to the version of N.Y. Labor Law § 195(1)(a) that was in effect when

Defendants employed Severino and when Severino filed this action:

> Every employer shall . . . provide his or her employees . . . at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer . . . ; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.  Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years. . . . For all employees who are not exempt from overtime compensation . . . , the notice must state the regular hourly rate and overtime rate of pay . . . .

N.Y. Lab. Law § 195(1)(a) (2013).  The statute was amended on December 29, 2014, effective February 27, 2015, to eliminate the requirement that an employee be provided with such notice "on or before February first of each subsequent year of the employee's employment with the employer."  *See* 2014 N.Y. Sess. Laws ch. 537, § 1 (McKinney).  Section 195(3) further required—and continues to require—that every employee be provided with a statement containing similar information, including "allowances, if any, claimed as part of the minimum wage," with each payment of wages.  N.Y. Lab. Law § 195(3).

Under the version of the WTPA that applied when Severino was employed, an employee not provided with the required annual notice under § 195(1)(a) could recover damages of $50 for each week that the violations occurred or continued to occur, not to exceed a total of $2,500, plus reasonable costs and attorney's fees.[16]  *See* N.Y. Lab. Law § 198(1-b) (2013).  An employee not provided with the required wage statements under § 195(3) could recover damages of $100 for

---

[16] On December 29, 2014, effective February 27, 2015, these statutory damages were amended from $50 per week to $50 per day, and the cap on statutory damages was increased from $2,500 to $5,000.  *See* 2014 N.Y. Sess. Laws ch. 537, § 2 (McKinney).

each week that the violations occurred or continued to occur, not to exceed a total of $2,500, plus reasonable costs and attorney's fees.[17]  *Id.* § 198(1-d).  Severino asserts claims for failure to provide annual notice and failure to provide appropriate wage statements, (Am. Compl. ¶¶ 63, 64), and seeks summary judgment in his favor on both, (P's Mem. 14-16).  I address each in turn.

### 1.    Annual Notice of Wages

The WTPA, in both its current version and the version in effect at the time of Severino's employment, creates a private right of action only if an employee is not provided proper notice of his wages, as required by § 195(1)(a), "within ten business days of his or her first day of employment."  N.Y. Lab. Law § 198(1-b).  The since-repealed annual wage notice requirement was added to N.Y. Labor Law § 195 with the passage of the WTPA in 2010, and it took effect on April 9, 2011.  *See* 2010 N.Y. Sess. Laws ch. 564, § 3 (McKinney).  An employee who began working before April 2011 would not have been required to receive annual notice of his wages within ten business days of his or her first day of employment.  Thus, the question arises whether an employee who was already employed when the WTPA took effect on April 9, 2011, may properly bring a claim under § 198(1-b) for failure to provide annual notice of his wages.[18]

This District does not appear to have answered this question in a uniform manner.  One of my colleagues determined that, in light of the broad purpose of the WTPA, "the legislature could not have intended to confer a private right of action upon new employees, while depriving existing employees of the same right."  *Cuzco v. F & J Steaks 37th Street LLC*, No. 13-CV-1859, 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014).  Accordingly, the court concluded that any

---

[17] On December 29, 2014, effective February 27, 2015, these statutory damages were amended from $100 per week to $250 per day, and the cap on statutory damages was increased from $2,500 to $5,000.  *See* 2014 N.Y. Sess. Laws ch. 537, § 2 (McKinney).

[18] Again, the requirement to provide annual notice of wages has since been repealed.  *See* 2014 N.Y. Sess. Laws ch. 537, § 1 (McKinney).

employee whose wage rate *changed* at any point after April 9, 2011, could maintain a cause of action for failure to provide proper annual notice of wages. *Id.* By contrast, another of my colleagues, relying on the plain language of the statute, concluded that "only employees who did not receive a proper wage and hour notice at the time of hiring can sue for a penalty pursuant to § 198(1-b)." *Lin*, No. 10-CV-1335, 2012 WL 7620734, at *8 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted in full*, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013); *accord Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 26, 2014), *report and recommendation adopted in full*, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); *see also Gonsalez v. Marin*, No. 12-CV-1157, 2014 WL 2514704, at *7 (E.D.N.Y. Apr. 25, 2014) ("Plaintiffs seek damages for hiring statement violations on behalf of . . . the only plaintiff who was hired after April 9, 2011.").

I need not decide which of these interpretations is correct, as Severino is not entitled to bring a claim pursuant to § 198(1-b) under either interpretation. It is undisputed that Severino was compensated at a rate of $250 per week throughout his employment, which began in 2008. (Ds' 56.1 Resp. ¶¶ 26, 41.) Because Severino began his employment prior to April 9, 2011, and his wage rate did not subsequently change, Severino may not recover for failure to provide proper annual notice of his wages under any of this District's applicable law interpreting the previous version of the WTPA. I have identified no state or federal cases construing § 198(1-b) to allow a plaintiff who was hired before April 9, 2011, and whose wages did not change thereafter, to recover for his employer's failure to provide proper annual notice of his wages under the previous version of § 195(1)(a).[19] Accordingly, Plaintiff's Partial Motion for

---

[19] In *Mattia v. Ferrara Foods & Confections*, No. 12-CV-3972, 2013 WL 2339925, at *3 (S.D.N.Y. Apr. 18, 2013), the court granted summary judgment in favor of plaintiff on a § 198(1-b) annual notice claim but did not identify when the plaintiff had been hired or whether the plaintiff's wages had subsequently changed.

Summary Judgment is DENIED as to his claim for failure to provide annual notice under the WTPA.

>          2.          **Wage Statements**

Most existing cases holding employers liable for failing to satisfy the requirements of § 195(3) have done so where the employer has furnished no wage statements at all. *See, e.g.*, *Tackie v. Kett Enters. LLC*, No. 14-CV-2074, 2014 WL 4626229, *6 (S.D.N.Y. Sept. 16, 2014); *Jaramillo v. Banana King Rest. Corp.*, No. 12-CV-5649, 2014 WL 2993450, at *7 (E.D.N.Y. July 2, 2014). However, employers may also be held liable for furnishing wage statements that fail to comply with all of the WTPA's enumerated requirements. *See Lin v. Benihana N.Y. Corp.*, 2012 WL 7620734, at **7, 13 (certifying class with regard to wage statement claim based upon failure to include the employer's name, address, and phone number, and noting that "the statutory language clearly and unambiguously explains what the wage statements must contain"), *report and recommendation adopted in full*, 2013 WL 829098. Accordingly, Defendants may be liable under § 198(1-d) for violating § 195(3) if they provided Severino with wage statements that failed to disclose, *inter alia*, the "allowances, if any, claimed as part of the minimum wage." N.Y. Lab. Law § 195(3); (*see* P's Mem. 15).

There is no genuine dispute of material fact that Defendants failed to disclose the allowances they claimed as part of the federal minimum wage on the wage statements they furnished to Severino. *See* N.Y. Lab. Law § 195(3). It is undisputed that Severino received wage statements with his paychecks, and it is undisputed that these wage statements did not identify any allowance claimed by Defendants. (*See* Ds' 56.1 Resp. ¶ 43; Ps' Mem. 15.) My independent review of the pay stubs introduced into the record confirms that the wage statements provided to Severino after April 9, 2011, complied with many of the requirements of N.Y. Labor

Law § 195(3)—for example, by listing the employee's name; the employer's name, address, and phone number; the rate of pay; and the net and gross wages—but failed to indicate the allowances claimed by Defendants toward the federal minimum wage.[20] (*See* Severino Decl. Ex. B.) Plaintiff's Partial Motion for Summary Judgment is therefore GRANTED as to his claim for failure to provide proper wage statements under the WTPA.

The version of the statute in effect when Defendants failed to provide proper wage statements and when Severino initiated this action provided for $100 in damages per week, totaling no more than $2,500. *See* N.Y. Lab. Law § 198(1-d) (2013). Thus, under the applicable version of the statute, Severino is entitled to the statutory maximum if Defendants' violations of § 195(3) continued for twenty-five weeks or more. Nothing in the recent amendments to the statute, which increased the amount of statutory damages and the cap on statutory damages, suggests that they are intended to be retroactive. *See* 2014 N.Y. Sess. Laws ch. 537, § 2 (McKinney); *Bazignan v. Team Castle Hill Corp.*, No. 13-CV-8382, 2015 WL 1000034, at *3 & n.4 (S.D.N.Y. Mar. 5, 2015) (acknowledging recent amendments to statutory damages and cap but not applying them retroactively). The requirements of § 195(3) took effect on April 9, 2011, 2010 N.Y. Sess. Laws ch. 564, § 3 (McKinney), and Severino's employment was terminated

---

[20] If Defendants were not subject to the FLSA, they would likely not have needed to claim any allowances against the New York minimum wage. As a superintendent in a residential building, Severino is likely covered by a unique provision of the New York minimum wage law requiring that a residential janitor be paid a minimum weekly sum per unit of the building he maintains, rather than a minimum hourly wage. N.Y. Comp. Codes R. & Regs. (N.Y.C.R.R.) tit. 12, § 141-1.2; *see Koljenovic v. Marx*, 999 F. Supp. 2d 396, 401 (E.D.N.Y. 2014) (concluding that a live-in building superintendent was a "janitor" within the meaning of this provision). During the relevant time period, a janitor in a residential building was required to be paid $4.85 per week per unit in the building. N.Y.C.R.R. tit. 12, § 141-1.2(b). There were twenty-five units in Severino's building. (Gomez Dep. 57:23-58:2.) Therefore, if Defendants were not subject to the FLSA, it appears that Severino's minimum weekly compensation under New York law would have been $121.25—significantly less than Severino was paid. Because the FLSA applies, however, the state-specific minimum wage provisions are preempted and inapplicable, *see, e.g.*, *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009), and the federal minimum wage prescribed by the FLSA is "the minimum wage" for relevant purposes, N.Y. Lab. Law § 195(3). *See Haywood v. Drown*, 556 U.S. 729, 734 (2009) ("[F]ederal law is as much the law of the several States as are the laws passed by their legislatures.").

effective January 3, 2013, (Severino Decl. Ex. C).  Defendants failed to comply with § 195(3) throughout this period, which extended for well more than twenty-five weeks.  Accordingly, Severino is entitled to the $2,500 statutory maximum in damages, plus reasonable costs and attorney's fees.

### V.   <u>Conclusion</u>

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.  Specifically, summary judgment is granted in favor of Plaintiff with respect to liability on Plaintiff's minimum wage claim under the FLSA, 29 U.S.C. § 206(a)(1), and with respect to Plaintiff's claim for failure to provide proper wage statements under the WTPA, N.Y. Lab. Law § 195(3).  Summary judgment is denied with respect to liability on Plaintiff's overtime claim under the FLSA, 29 U.S.C. § 207(a)(1), and with respect to Plaintiff's claim for failure to provide notice of wages under the WTPA, N.Y. Lab. Law § 195(1)(a).  Because Plaintiff has not attempted to prove damages on his FLSA claims on the instant Motion, I reach no conclusions concerning the appropriate sum of damages on Plaintiff's minimum wage claim.  I reserve any rulings concerning damages under the FLSA for further proceedings.  Plaintiff has established that he is entitled to $2,500 in statutory damages, plus reasonable costs and attorney's fees, for Defendants' violation of the wage statement provisions of the WTPA.  The Clerk of Court is respectfully directed to terminate the pending motion.  (Doc. 33.)

The parties shall appear for a status conference on Thursday, April 23, 2015 at 2:30 pm to discuss the next steps in this case.

SO ORDERED.

Dated: March 19, 2015
        New York, New York

Vernon S. Broderick
United States District Judge